**M.E.V., Appellee**

v.

**R.D.V., Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 2, 2012.

Filed Oct. 23, 2012.

Raquel L. Taylor, Erie, for appellant.

Matthew W. Fuchs, Erie, for appellee.

BEFORE: BENDER, DONOHUE, and STRASSBURGER *, JJ.

OPINION BY STRASSBURGER, J.:

R.D.V. (Father) appeals from the order overruling his preliminary objections to a complaint for custody of the parties' two children filed by M.E.V. (Mother). Upon review, we reverse.

The following facts are gleaned from the testimony presented at the hearing on Father's preliminary objections. Father and Mother began living together in Father's hometown of Logan Township, New Jersey in 2003, and they were married on September 24, 2005. They had two children together, born in 2007 and 2010. On May 15, 2011, Mother found out that Father had been having an affair with anoth-

* Retired Senior Judge assigned to the Superior Court.

er woman. On June 2, 2011, Mother moved with the children to Erie, Pennsylvania, her hometown where she had a family support system. Mother testified that she was "devastated, blind-sided, [and] very distraught" upon finding out about Father's affair. N.T., 3/20/2012, at 49. Mother also testified that Father did not initially agree to Mother moving to Erie with the children, but shortly thereafter, the two reached an agreement. Wife testified that it was her understanding that she and Father "will have to reevaluate at six months what [they were] going to do" after the move. *Id.* at 38. In November 2011, approximately five months later, Mother told Father that she "was never going to come back to New Jersey." *Id.* On November 30, 2011, Father filed a complaint for divorce in the New Jersey courts. That complaint averred, *inter alia*, that New Jersey is the children's home state and that the children should be returned to New Jersey where the parties could exercise joint legal custody and Father would be named parent of primary residence. Mother was served with a copy of this complaint on December 28, 2011.

On January 13, 2012, Mother filed a complaint for custody in the Court of Common Pleas of Erie County, Pennsylvania. On February 6, 2012, Father filed preliminary objections to the complaint for custody asserting that a prior custody action had been filed by him in New Jersey, of which Mother was aware, and therefore, as a matter of law, venue was improper in Erie County.

On March 20, 2012, the trial court in Erie held a hearing on this matter. On March 21, 2012, the trial court overruled Father's preliminary objections. Father then requested the trial court amend its order to allow an interlocutory appeal by permission pursuant to Pa.R.A.P. 1311(b) and 42 Pa.C.S. § 702(b) [1] because the matter raises a substantial issue of jurisdiction. On April 16, 2012, the trial court amended its order with the prescribed language and Father filed a timely petition for permission to appeal to this Court. On June 14, 2012, this Court denied the petition as moot, concluding that the order was immediately appealable as of right pursuant to Pa.R.A.P. 311(b)(2). Father filed a concise statement of matters complained of on appeal and the trial court issued an opinion.

On appeal, Father raises the following issues:

A. Whether the court erred in concluding Pennsylvania was the children's "home state" under the UCCJEA when the facts of record conclusively demonstrate [Mother's] move to Pennsylvania was only temporary?

B. Whether the court's exclusion of a mediation report arising out of the state of New Jersey on grounds of confidentiality was in error?

C. Whether the [trial] court erred when it overruled [Father's] objection to a line of questioning involving allegations of marital infidelity constitutes an abuse of discretion? [*sic* ]

Father's Brief at 4.

◼ Before we consider Father's issues on appeal, we are obliged to consider the

---

1. That section provides:

When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

42 Pa.C.S. § 702(b).

subject matter jurisdiction of the Pennsylvania courts pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), 23 Pa.C.S. §§ 5401–5482. In other words, we consider whether Pennsylvania had jurisdiction to determine the issue of whether it had jurisdiction. We recognize that neither Father nor the trial court specifically addressed the issue of subject matter jurisdiction. However, "[i]t is well-settled that the question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte.*" *B.J.D. v. D.L.C.,* 19 A.3d 1081, 1082 (Pa.Super.2011).

■ In addressing this issue, we are guided by the following standard of review:

> A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of that discretion. Under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. An abuse of discretion requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures.

*Wagner v. Wagner,* 887 A.2d 282, 285 (Pa.Super.2005) (quoting *Lucas v. Lucas,* 882 A.2d 523, 527 (Pa.Super.2005) (citation omitted)).

We must also keep in mind the purposes behind the promulgation of the UCCJEA, also recognizing that although the UCCJEA replaced the Uniform Child Custody Jurisdiction Act (UCCJA) in 2004, much of the case law as decided under the UCCJA is still applicable. For this analysis, we consider this Court's decision in *Harcar v. Harcar,* 982 A.2d 1230, 1237–38 (Pa.Super.2009), which cited with approval

our language in *Goodman v. Goodman,* 383 Pa.Super. 374, 556 A.2d 1379 (1989), which was decided under the UCCJA.

> The manifold purposes of the UCCJA ... include avoidance of jurisdictional conflicts; promotion of cooperation between "interested" jurisdictions; assurance of custody litigation in the forum having the greatest nexus with the case; and deterrence of abductions.

> \*　　\*　　\*

> The Court in *Goodman* continued to set forth the situations in which a court may properly decline to exercise jurisdiction. In the first situation, **the trial court must abstain from exercising jurisdiction because another forum has jurisdictional priority. This is known as the "first in time rule," as expressed in 42 Pa.C.S.A. § 5347 (now 23 Pa. C.S.A. § 5426), and is mandatory.** *Goodman,* 556 A.2d at 1387. The other section, set forth at 42 Pa.C.S.A. § 5348 (now 23 Pa.C.S.A. § 5427), is a permissive declination provision. The Court in *Goodman* stated:

>> An action is pending from its commencement to its final determination on appeal, or until the time for appeal has expired. Because " 'the policy against simultaneous custody proceedings is so strong' ... courts should refrain from exercising jurisdiction to further the purposes of the Act."

*Harcar v. Harcar,* 982 A.2d 1230, 1237–38 (Pa.Super.2009) (some citations omitted; emphasis added). In other words, a trial court MUST not exercise jurisdiction when another state has jurisdiction priority. Such language is codified in the statute regarding simultaneous proceedings, which provides as follows.

> (a) **General rule.**—Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), **a**

court of this Commonwealth may not exercise its jurisdiction under this subchapter if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this chapter unless the proceeding has been terminated or is stayed by the court of the other state because a court of this Commonwealth is a more convenient forum under section 5427 (relating to inconvenient forum).

(b) **Stay; communication with other court.**—Except as otherwise provided in section 5424, a court of this Commonwealth, before hearing a child custody proceeding, shall examine the court documents and other information supplied by the parties pursuant to section 5429 (relating to information to be submitted to court). If the court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this chapter, the court of this Commonwealth shall stay its proceeding and communicate with the court of the other state. If the court of the state having jurisdiction substantially in accordance with this chapter does not de-

termine that the court of this Commonwealth is a more appropriate forum, the court of this Commonwealth shall dismiss the proceeding.

23 Pa.C.S. § 5426 (emphasis added).[2]

The statute defines commencement as occurring upon "[t]he filing of the first pleading in a proceeding." 23 Pa.C.S. § 5402. The statute defines "child custody proceeding" as follows:

A proceeding in which legal custody, physical custody or visitation with respect to a child is an issue. The term includes a proceeding for **divorce**, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights and protection from domestic violence, in which the issue may appear.

*Id.* (emphasis added).

■ In this case, the trial court concluded that Father did not initiate a custody action, as contemplated under the statute, because "there are no custody proceedings scheduled or pending in New Jersey, and neither party contends that an initial child custody determination has been made in the matter." Trial Court Opinion, 6/27/2012, at n. 1. As such, the trial court did not contact the New Jersey courts,

---

2. We recognize that the Comment to the rule provides:

Under this Act, the simultaneous proceedings problem will arise only when there is no home state, no state with exclusive, continuing jurisdiction and more than one significant connection state. For those cases, this section retains the "first in time" rule of the UCCJA. Subsection (b) retains the UCCJA's policy favoring judicial communication. Communication between courts is required when it is determined that a proceeding has been commenced in another state.

23 Pa.C.S. § 5426 (Comment). However, we also keep in mind that the Statutory Construction Act states:

The comments or report of the commission, committee, association or other entity which drafted a statute may be consulted in the construction or application of the original provisions of the statute if such comments or report were published or otherwise generally available prior to the consideration of the statute by the General Assembly, **but the text of the statute shall control in the event of conflict between its text and such comments or report.**

1 Pa.C.S. § 1939 (emphasis added). Instantly, such a conflict exists because the children have a home state in this case.

pursuant to 23 Pa.C.S. § 5426(b), with regard to this case.

We hold that the trial court abused its discretion in making this determination. There is no question that Father filed a complaint for divorce in New Jersey, which included averments regarding custody, on November 30, 2011, which was served on Wife on December 28, 2011. Mother filed her complaint for custody on January 13, 2012. As such, a child custody proceeding, as defined by the statute, was commenced in New Jersey prior to the child custody proceeding commencing in Pennsylvania. Thus, it was incumbent upon the trial court to stay the Pennsylvania proceeding, contact the New Jersey courts in accordance with 23 Pa.C.S. § 5410, regarding communication between courts,[3] who would then have the opportunity to exercise or decline jurisdiction. The failure to follow this procedure was an abuse of discretion and the trial court's order must be reversed on this basis, because it lacked jurisdiction to enter the order.

■ Even if we were to conclude that the trial court did not abuse its discretion in failing to contact the New Jersey courts under the simultaneous proceedings rule, the trial court still abused its discretion in

determining that Pennsylvania is the children's home state for the purposes of making an initial child custody determination. That statute provides as follows.

### § 5421. Initial child custody jurisdiction.

(a) **General Rule.**—Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:

(1) this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;

(2) a court of another state does not have jurisdiction under paragraph (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under section 5427 (relating to inconvenient forum) or 5428 (relating to

3. The statute provides as follows:

(a) **General rule.**—A court of this Commonwealth may communicate with a court in another state concerning a proceeding arising under this chapter.

(b) **Participation of parties.**—The court may allow the parties to participate in the communication. If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.

(c) **Matters of cooperation between courts.**—Communication between courts on schedules, calendars, court records and similar matters may occur without informing the parties. A record need not be made of the communication.

(d) **Record.**—Except as otherwise provided in subsection (c), a record must be made of a communication under this section. The parties must be informed promptly of the communication and granted access to the record. exercise or decline jurisdiction. The failure to follow this procedure was an abuse of discretion and the trial court's order must be reversed on this basis, because it lacked jurisdiction to enter the order.

(e) **Definition.**—As used in this section, the term "record" means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form.

23 Pa.C.S. § 5410.

jurisdiction declined by reason of conduct) and:

(i) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence; and

(ii) substantial evidence is available in this Commonwealth concerning the child's care, protection, training and personal relationships;

(3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this Commonwealth is the more appropriate forum to determine the custody of the child under section 5427 or 5428; or

(4) no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2) or (3).

(b) **Exclusive jurisdictional basis.**—Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this Commonwealth.

23 Pa.C.S. § 5421.

Furthermore, the UCCJEA defines the "home state" as:

The state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding.... A period of temporary absence of any of the mentioned persons is part of the period.

23 Pa.C.S. § 5402.

Instantly, the trial court determined that the children lived with Mother in Pennsylvania for six months. The issue in this case is whether the move to Pennsylvania was temporary or permanent. The trial court concedes that under *R.M. v. J.S.*, 20 A.3d 496 (Pa.Super.2011), if Mother's move to Pennsylvania was temporary, then the children are considered to have lived in New Jersey for jurisdictional purposes. Trial Court Opinion, 6/27/2012, at 7.

Mother testified regarding this topic as follows:

Q. And so when you moved to Erie or when you came to stay in Erie, what date was that?

A. June 2nd.

Q. And at that time you did not have an agreement with [Father] that you were going to be able to permanently relocate to Erie; is that correct?

A. That's correct.

Q. And he made his objections known?

A. (Nods head affirmatively.)

Q. Is that a yes?

A. Yes.

Q. Where were the boys at that time?

A. They were with me.

Q. So there came a point where you realized that if [Father] was not going to agree to allow you to relocate permanently to Erie, this was going to be a problem, because essentially you either had his permission to relocate with the children or you were going to have to have a formal relocation trial, correct?

A. Correct.

Q. And you knew that?

A. Yes.

Q. The only way you were going to get them is if he were to consent to allow you to come to Erie?

A. Correct.

Q. You wanted him to consent?

A. Correct.

Q. Would it be fair to say that you and [Father] had a number of conversations relative to you coming to Erie?

A. Conversations?

Q. Yes. About you telling him I want to go to Erie, him saying no, no, no?

A. Yes.

Q. So there came a point where you reached an agreement obviously, correct?

A. Uh-huh.

Q. And that would have been, let's say, June 13th of 2011?

A. Can you repeat that again?

Q. There came a point ... where you reached an agreement with [Father] that you were going to be able to come to Erie; isn't that correct?

A. Correct.

Q. The agreement was—initially the agreement was that was going to be on a temporary basis?

A. Correct.

Q. And you told him or you agreed with him that the period of time that you would be in Erie would not exceed six months; is that correct?

A. That's not correct.

Q. What did you tell him?

A. I said, we'll have to reevaluate at six months what we're going to do. Then I said, I never was going to come back to New Jersey.

Q. When did you make that comment?

A. At two months prior to the six months.

Q. So that would be November?

A. Correct.

Q. So I'm just talking about June right now. I just want to know about this initial agreement you had with [Father]. The agreement was you were going to come to Erie on a temporary basis, correct?

A. Correct.

N.T., 3/20/2012, at 36–39.

From this testimony, the trial court concluded that the "relocation was temporary only in the sense that [Mother] wanted to try to get the children settled and take time to see if she and Father could agree on a custody arrangement that would work between Erie and New Jersey, without going to court." Trial Court Opinion, 6/27/2012, at 6. The trial court further stated that it interpreted Mother's testimony as being that "Mother intended for the schedule that the parties agreed to upon her relocation to Erie to be temporary, not the relocation itself." *Id.* at 7. Thus, the trial court concluded that Pennsylvania was the children's home state as they lived there permanently with Mother for six months. We disagree.

Reviewing this testimony, we cannot see how the trial court determined that the Mother lived in Pennsylvania permanently for the entire period between June 2, 2011 and January 13, 2012. By her own admission, Mother told Father she was not moving back to New Jersey in November 2011. Logically, any time spent in Pennsylvania between June 2, 2011 and November 2011 would be considered temporary because Mother would have had no need to tell Father she was not going to go back to New Jersey if she always had intended the move to be permanent. At most, the children only resided permanently with Mother in Pennsylvania between November 2011 and January 2012, not nearly the six months required by statute. As such, we conclude the trial court abused its discretion in determining that Pennsylvania was the children's home state and thus exercising jurisdiction pursuant to 23 Pa.C.S. § 5421(1).

We also point out that our decision here reversing the trial court's decision to exercise jurisdiction in the matter is not a determination that Pennsylvania cannot exercise jurisdiction. It is only a determination that Pennsylvania does not have jurisdiction to determine whether or not it has jurisdiction over this custody matter. The proper state for that determination under these circumstances is New Jersey.[4]

Order reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

**In re R.R.**

---

**4.** Based on this conclusion, we need not consider Father's other two issues as they are moot.