J-A09007-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| M.A.A. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| V.A. | : | No. 1687 WDA 2017 |

Appeal from the Order Dated October 12, 2017
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  2180 of 2013-D

BEFORE:  BOWES, J., DUBOW, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:                    FILED JUNE 08, 2018

M.A.A. ("Mother") appeals from the order entered October 12, 2017, which found that Pennsylvania retains exclusive, continuing jurisdiction over her child custody case with V.A. ("Father"), and that Pennsylvania is not an inconvenient forum.  We affirm.

H.A. was born during July 2005 of the parties' marriage.  Mother commenced this action by filing a complaint in divorce on October 23, 2013, which included a count for custody.  At the time, both parties resided in Westmoreland County, Pennsylvania.  On December 3, 2013, the trial court entered a custody consent order.  The order awarded Mother sole legal and primary physical custody of H.A., and awarded Father partial physical custody "as the parties shall agree."  Custody Consent Order of Court, 12/3/13, at ¶ 2b.  The order also provided that jurisdiction over the case would "remain with the Court of Common Pleas of Westmoreland County, Pennsylvania until

further Order of Court or upon consent of the parties." Id. at ¶ 7. The court entered a divorce decree on February 14, 2014.

In August 2016, Mother and H.A. relocated to Coeur d'Alene, Idaho, with Father's approval. H.A. now attends school in Idaho. She attends a church, participates in violin lessons, and receives care from a variety of medical providers, including a pediatrician, dentist, orthodontist, optometrist, and chiropractor. Since the relocation, H.A. has returned to Pennsylvania twice to visit family. H.A.'s maternal grandmother resides in Pennsylvania, as do two of her maternal aunts and two cousins. H.A. returned to Pennsylvania for Christmas in 2016, and again in June 2017, in order to attend her cousin's graduation party.

On August 9, 2017, Father filed a petition for modification of custody. In his petition, Father averred that Mother was only rarely allowing him to exercise custody of H.A. Father requested eight weeks of physical custody during the summer and one week during H.A.'s Christmas vacation. The trial court scheduled a custody conciliation conference for September 28, 2017.

On September 14, 2017, Mother responded by filing an answer and counter-petitions to dismiss and transfer/stay the petitions. She denied the averments contained in Father's petition for modification of custody. In addition, Mother argued that the trial court lacked exclusive, continuing jurisdiction over the case pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). Mother requested that the court dismiss Father's petition and transfer the case to Idaho. In the alternative, Mother

requested that the court stay the matter and cancel the custody conciliation conference on the basis that Pennsylvania is an inconvenient forum.

The trial court conducted an evidentiary hearing on Mother's counter petitions on September 25, 2017. Following the hearing, on September 27, 2017, the court entered an order continuing the parties' custody conciliation conference generally. On October 12, 2017, the court entered the order complained of on appeal, finding that Pennsylvania retains exclusive, continuing jurisdiction over this case and that it is not an inconvenient forum. Therefore, the court denied Mother's counter-petitions. The custody conciliation conference was rescheduled for December 5, 2017.[1]

Mother filed a motion for reconsideration on October 26, 2017, and a motion for recusal on November 2, 2017. Mother timely filed a notice of appeal and concise statement of errors complained of on appeal on November 3, 2017, before the trial court ruled on either motion.[2] On November 9, 2017, the court certified that the October 12, 2017 order involved a substantial issue of jurisdiction, rendering it appealable as of right pursuant to Pa.R.A.P. 311(b)(2).

_____

[1] The trial court continued the custody conciliation conference for a second time on December 5, 2017, pending the outcome of Mother's appeal. The court directed that either party could request that it reschedule the custody conciliation conference if this Court rules that Pennsylvania retains jurisdiction.

[2] The trial court subsequently denied Mother's motions for reconsideration and recusal on November 22, 2017.

Mother now raises the following questions for our review:

I. Did the trial court commit an abuse of discretion when it ruled that Pennsylvania has jurisdiction over a child custody modification proceeding based upon 23 Pa.C.S.[] [§] 5422(a)(1) of the UCCJEA, where the child and one parent have not lived in Pennsylvania in over a year, have no significant connection with Pennsylvania, and substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training, and personal relationships?

II. Did the trial court commit an abuse of discretion when it ruled that Pennsylvania is the more convenient forum to hear the child custody modification matter based upon 23 Pa.C.S.[] [§] 5427 of the UCCJEA based upon the evidence of record?

Mother's brief at 5.

In her first issue, Mother challenges the trial court's finding that it retains subject matter jurisdiction over this custody case. This issue presents a pure question of law. S.K.C. v. J.L.C., 94 A.3d 402, 408 (Pa.Super. 2014) ("we hold that a trial court's decision that it possesses subject matter jurisdiction under section 5422 is purely a question of law"). Therefore, our standard of review is de novo and our scope is review is plenary. Id.

Mother concedes that the trial court had jurisdiction to render an initial child custody determination at the time it entered the December 3, 2013 custody consent order. Mother's brief at 10. However, she contends that the court lost exclusive, continuing jurisdiction after H.A. moved to Idaho. Id. at 10-12.

The UCCJEA provides as follows:

(a) General rule.--Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this

- 4 -

Commonwealth which has made a child custody determination consistent with section 5421 (relating to initial child custody jurisdiction) or 5423 (relating to jurisdiction to modify determination) has exclusive, continuing jurisdiction over the determination until:

> (1) a court of this Commonwealth determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships; or

> (2) a court of this Commonwealth or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this Commonwealth.

(b) Modification where court does not have exclusive, continuing jurisdiction.--A court of this Commonwealth which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under section 5421.

23 Pa.C.S. § 5422.

Mother focuses her challenge on the significant contact language in § 5422(a)(1). She contends that H.A. no longer maintains a significant connection to Pennsylvania and that there is no evidence here concerning her care, protection, training, or personal relationships "aside from a couple of friends, a grandmother, and Father/Appellee." Id. Mother emphasizes that many important aspects of H.A.'s life, including her school, extracurricular activities, and medical care providers are now located in Idaho, and that H.A. has visited Pennsylvania only twice since moving away. Id. at 12-15.

In its opinion, the trial court found that Pennsylvania retains exclusive, continuing jurisdiction. The court reasoned as follows:

> While the child may not have as close a relationship with her father as other children, it should be noted that she was less than one year removed from twice-weekly contact with him when the modification petition was filed. Since the relocation, they have seen each other during her visits to Pennsylvania. [Mother] and her daughter also have meaningful relationships with [Mother's] mother and sisters, who they have seen twice since the move and who they intend to visit at least once per year. The child has a number of friends in Pennsylvania who are intimate enough that visits with them are scheduled when they return. There is also evidence in Pennsylvania regarding [H.A.'s] health, schooling, religion, and extracurricular activities. Given the recency of the move, this evidence would likely be relevant.

Trial Court Opinion, 12/4/2017, at 8-9.

In considering the propriety of the trial court's determination, we find instructive this Court's decision in Rennie v. Rosenthol, 995 A.2d 1217 (Pa.Super. 2010). In that case, an unmarried couple adopted a child in 1998 while residing in Pennsylvania. Id. at 1218. They separated five months later, and in 2003, the mother relocated with the child to Minnesota. Id. at 1218-19, 1222. The father remained in Pennsylvania and the parties continued to litigate custody in the Philadelphia County Court of Common Pleas. Id. at 1219. After the father filed a petition for modification of custody in 2008, the mother requested that the trial court relinquish jurisdiction to Minnesota pursuant to § 5422(a)(1). Id. at 1219. The court denied the mother's request. Id.

- 6 -

On appeal, this Court affirmed the trial court's decision. After reviewing the plain language of the UCCJEA, we concluded that both the child and the father maintained a significant connection to Pennsylvania. Id. at 1222. We explained that a significant connection exists "as long as the child and at least one parent have an important or meaningful relationship to the Commonwealth."[3] Id. at 1221. Applying that definition to the facts of the case, we emphasized that the child lived in Pennsylvania for five years after her adoption. Id. at 1222. The parties continued to live in Pennsylvania following their divorce and entered into an agreement providing that Pennsylvania would retain jurisdiction. Id. We further emphasized that the father maintained a strong relationship with the child and exercised custody of her in Pennsylvania, and the child maintained relationships with members of her extended family and with several friends in the state. Id.

Similarly, our review of the record in this case confirms that both H.A. and Father maintain a significant connection to Pennsylvania. H.A. lived in Pennsylvania from the time she was born until she was eleven years old.[4]

_____

[3] We later restated this definition as follows: "As indicated in clear language in the statute, a 'significant connection' will be found where one parent resides and exercises parenting time in the state and maintains a meaningful relationship with the child." Rennie v. Rosenthol, 995 A.2d 1217, 1222 (Pa.Super. 2010).

[4] Specifically, Mother averred in her 2013 divorce complaint that H.A. resided at the parties' marital residence in Westmoreland County from birth until the present. Complaint in Divorce, 10/23/2013, at ¶ 19.

Mother and Father remained in Pennsylvania for nearly three years after Mother commenced divorce proceedings and entered into the agreement providing that Pennsylvania would retain jurisdiction until further order of court or upon consent of the parties. Father continues to reside in Pennsylvania and exercises custody of H.A. in the state. N.T., 9/25/17, at 29-32. Father testified that he spent approximately forty hours with H.A. during her two return trips to Pennsylvania. Id. H.A. also continues to have several friends in Pennsylvania with whom she stays in contact and visits during these trips. Id. at 41-42. Moreover, Mother testified that H.A.'s maternal grandmother lives in Pennsylvania, as do two of her maternal aunts and two cousins. Id. at 17. Mother intends to continue to return to Pennsylvania with H.A. at least once every year for Christmas. Id. In light of this evidence, it is clear that Pennsylvania retains exclusive continuing jurisdiction pursuant to § 5422(a)(1).[5]

In her second issue, Mother challenges the trial court's finding that Pennsylvania is not an inconvenient forum. We review this issue pursuant to

_____

[5] Since we conclude that Father and H.A. maintain a significant connection to Pennsylvania, we need not consider whether substantial evidence is available here concerning H.A.'s care, protection, training and personal relationships. Rennie v. Rosenthol, 995 A.2d 1217, 1223 (Pa.Super. 2010). "[E]xclusive jurisdiction continues in Pennsylvania until both a significant connection to Pennsylvania and the requisite substantial evidence are lacking. In other words, Pennsylvania will retain jurisdiction as long as a significant connection with Pennsylvania exists or substantial evidence is present." Id. at 1221 (emphasis in original).

- 8 -

an abuse of discretion standard of review. S.K.C., *supra* at 406, 414 (explaining, "when a trial court possesses subject matter jurisdiction over a child custody dispute, a trial court's decision to exercise that jurisdiction is subject to an abuse of discretion standard of review"). "Under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings." M.E.V. v. R.D.V., 57 A.3d 126, 129 (Pa.Super. 2012) (quoting *Wagner v. Wagner*, 887 A.2d 282, 285 (Pa.Super. 2005)).

The UCCJEA provides that a trial court with exclusive, continuing jurisdiction over a child custody matter may decline to exercise that jurisdiction and transfer the case to another state if it concludes that Pennsylvania is an inconvenient forum:

> (a) General rule.--A court of this Commonwealth which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion or request of another court.
>
> (b) Factors.--Before determining whether it is an inconvenient forum, a court of this Commonwealth shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:
>
> > (1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) the length of time the child has resided outside this Commonwealth;

(3) the distance between the court in this Commonwealth and the court in the state that would assume jurisdiction;

(4) the relative financial circumstances of the parties;

(5) any agreement of the parties as to which state should assume jurisdiction;

(6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8) the familiarity of the court of each state with the facts and issues in the pending litigation.

(c) Stay.--If a court of this Commonwealth determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.

(d) Jurisdiction declined.--A court of this Commonwealth may decline to exercise its jurisdiction under this chapter if a child custody determination is incidental to an action for divorce or another proceeding while still retaining jurisdiction over the divorce or other proceeding.

23 Pa.C.S. § 5427.

Mother argues that the Pennsylvania trial court is no more familiar with this matter than a court in Idaho would be, because the parties never tried the case on its facts. Mother's brief 18-19. Mother acknowledges that the

December 3, 2013 consent order includes a provision stating that Pennsylvania will retain jurisdiction, but insists that this provision "is not dispositive of the issue and was contained in an order that was 4 years old and was written at a time well before any decision to move out of state was even being contemplated." Id. at 19. Mother maintains that keeping this case in Pennsylvania would require her to present the testimony of "10 or 12 witnesses" via deposition, which would be manifestly unreasonable. Id. at 19-20. She contends that Father's income "is certainly not at a poverty level" and castigates him for not paying child support. Id.

The trial court found as follows:

A review of the above factors indicates neither that Pennsylvania is an inconvenient forum nor that Idaho is a more appropriate forum. At the September 25, 2017 hearing, there was no evidence of any domestic violence. As previously stated, [Mother] and the minor child had been living in Idaho for less than a year when the modification petition was filed. Witnesses and evidence are located in both Pennsylvania and Idaho. However, [Father] is asking for only limited partial physical custody, when the minor child is not in school. Therefore, the educational information becomes less important. From a familial standpoint, there are more witnesses in Pennsylvania, with [Father], the maternal grandmother, and the two maternal aunts located in Pennsylvania and [Mother] and child located in Idaho. The child has friends in both areas, and it could be argued that the testimony of those located in Pennsylvania [is] more important, given that H.A. will see her friends in Idaho during the school year regardless of the result of [Father's] Petition. There are witnesses in both states who can testify about H.A.'s religious and musical study.

With regard to health care providers, Pennsylvania law allows their trial testimony to be provided by deposition. In fact, arguably any witness from Idaho could provide testimony by deposition under Pennsylvania's rules, given their distance of

greater than one hundred miles from the Westmoreland County Courthouse. If a party wanted to offer witnesses to testify by telephone they could request court approval and would be allowed to do so upon good cause shown. In fact, [Mother] testified by telephone at the evidentiary hearing. Finally, in Pennsylvania, any expert can testify by videotape deposition, regardless of his or her location.

The Pennsylvania court is marginally more familiar than the Idaho court with the facts and issues of this custody case based on the litigation that has occurred to date. This is not, however, a major factor.

The Court takes judicial notice that Coeur D'Alene, Idaho is located over 2,200 miles from Greensburg, Pennsylvania and that it would take approximately thirty-three (33) hours to drive there. From the evidence presented, it would appear that [Mother] is in a better financial position than [Father] to make that journey. [Father] is retired with an adverse medical condition, rents an apartment, and lives on a low monthly pension. While there was not a great deal of evidence adduced regarding [Mother's] financial condition, it was uncontroverted that [Mother] has already made the trip to Pennsylvania from Idaho twice and plans to return again over Christmas, 2017 and every Christmas thereafter. Additionally, while [Father], who has no friends or relatives in Idaho, would have to pay for lodging there, [Mother] would presumably stay with friends or family in Pennsylvania.

Finally, this Court must take into account the jurisdictional agreement between the parties, set forth in the custody order from November 25, 2014. The plain language of the agreement indicates not that jurisdiction was to always remain in Westmoreland County but that it would remain there until the parties agreed, or the Court decided otherwise. It was another way of saying that the parties were barred from filing the next pleading or motion in some state other than Pennsylvania. It certainly cannot be assumed that the parties agreed that if either filed a future modification petition, the litigation surrounding it would occur in Pennsylvania. By the same token, there was unquestionably no agreement that future litigation was to occur in Idaho.

Trial Court Opinion, 12/4/17, at 11-14 (footnotes and citations to the record omitted) (emphasis in original).

Once again, we conclude that Mother is not entitled to relief. As the trial court found, Pennsylvania is marginally more familiar with the facts of this case than Idaho. The case originated here in 2013, and the court has at least some knowledge of the parties, H.A., and the circumstances of their lives. If a trial court in Idaho were to hear this case, it would be starting from scratch.

More importantly, the record supports the trial court's finding that Mother is more financially capable of traveling back and forth between Idaho and Pennsylvania than Father. Father is sixty-one years old. N.T., 9/25/17, at 27. Father testified that he retired after suffering an aortic aneurism and that his only source of income is a $1,700 per month pension he receives for his service in the Marine Corps. Id. at 28-29. The record does not indicate that Father has any family or knows anyone in Idaho other than Mother and H.A. In contrast, Mother is employed full-time as a teacher. Id. at 16. Mother testified that she has already returned to Pennsylvania twice in the thirteen months since she moved away and plans to continue returning at least once per year. Id. at 17. Mother has family in Pennsylvania, and presumably can travel here without having to stay at a hotel.

Moreover, there is simply no reason to believe that Mother would need the testimony of "10 or 12 witnesses" in order to litigate this custody case. Father is requesting partial physical custody of H.A. during her breaks from school and H.A. does not suffer from any significant medical problems. Under

the circumstances, the testimony of teachers, doctors, and other witnesses from Idaho would be of little relevance. Even if this testimony were to become significant in the future, the trial court has indicated that it would be willing to accommodate Mother by allowing her to present witnesses via telephone or deposition. Accordingly, the record supports the trial court's finding that Pennsylvania is not an inconvenient forum pursuant to § 5427.[6]

Based on the foregoing, we conclude that the trial court did not err or abuse its discretion by denying Mother's counter petitions to dismiss and transfer/stay. Therefore, we affirm the court's October 12, 2017 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/8/2018

---

[6] Concerning the provision in the December 3, 2013 custody consent order providing that jurisdiction would remain in Pennsylvania, the trial court interpreted this provision in a manner favorable to Mother. The court analyzed the plain language of the provision and concluded that the parties did not intend to bar any future litigation from occurring outside of the state. We agree with the court's assessment of this issue. It is clear that the court gave this provision little weight and its analysis does not provide a basis to disturb the court's order.