J-S45026-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| R.S.M. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| L.K.M. | : | No. 319 MDA 2018 | |

Appeal from the Order Entered January 17, 2018
in the Court of Common Pleas of Cumberland County
Civil Division at No(s): 2017-6957

BEFORE:   PANELLA, J., OTT, J., and PLATT*, J.

MEMORANDUM BY OTT, J.:                    **FILED SEPTEMBER 21, 2018**

R.S.M. ("Father") appeals from the order entered on January 17, 2018, in the Court of Common Pleas of Cumberland County, granting the preliminary objections filed by L.K.M. ("Mother") and relinquishing jurisdiction of the child custody litigation to King County, Washington.  Upon review, we affirm.

The trial court set forth the relevant procedural history, as follows.

> This case began in the State of Washington on June 2, 2017, when [Mother] filed a complaint for divorce, along with a claim for custody of her two children with [Father].[1]  On June 27, 2017, Father then filed a complaint for divorce and custody in Cumberland County, Pennsylvania.  Following that filing, and the

_____

* Retired Senior Judge assigned to the Superior Court.

[1] N.S.M. and E.S.M., both males, were born to the parties during their marriage.  They were five years old and sixteen months old, respectively, at the time of the subject proceedings.

court being unaware that there was already a pending matter in Washington, a conciliation conference was held on August 23, 2017, resulting in a Court Order of August 30, 2017.[2] Mother was not represented [by counsel] at this time.

On November 3, 2017, Father filed a petition for contempt, seeking to return the children to Pennsylvania. Mother then hired counsel, who filed preliminary objections to the original complaint on November 27, 2017, challenging this [c]ourt's jurisdiction, as well as claiming pendency of a prior action. Father's counsel answered the preliminary objections on December 13, 2017, and a hearing was held on January 5, 2018.

Trial Court Opinion, 2/14/18, at 1.

The testimonial evidence revealed that Father and Mother were married in the State of Washington in 2014. N.T., 1/5/18, at 9. The older child, N.S.M., was born in Pennsylvania. The younger child, E.S.M., was born in Washington. Trial Court Opinion, 2/14/18, at 2. The trial court found that the family presented as "very nomadic." *Id.* at 3. The family lived in Washington from March 2016 through October 2016. *Id.* The court found, "From approximately October 2016 through April 2017, the family lived in Father's home in Carlisle, Pennsylvania[.]"[3] *Id.* They returned to Washington in April 2017. N.T., 1/5/18, at 31. The court made the following factual findings regarding the family's connection to Washington:

Mother has a teenage daughter who lives with her biological [f]ather in Washington. Mother and Father own four vehicles, at least two of which were bought and registered in Washington.

_____

[2] The parties agreed to the August 30, 2017 order, which granted them shared physical and legal custody. Trial Court Opinion, 3/19/18, at 1.

[3] Father purchased the home in 2004. N.T., 1/5/18, at 11.

Mother's mother, Mother's two brothers, her aforementioned teenage daughter, and an older son all live in Washington. Mother has been a resident of Washington since her birth in 1972.

. . . The children's doctor, a naturopath, is located in Washington. In 2016, all four members of the family had health insurance from Washington; Mother and the two children still have Washington health insurance. The Carlisle[, Pennsylvania] house, owned in Father's name only, in which the family resided when they stayed in Pennsylvania, was placed for sale for approximately four months in 2016; Father testified that he removed the listing when he determined that it was overpriced and was not going to sell. At the time that the house was listed for sale, the family had discussed living in Washington for the next three years until Mother's daughter graduated from high school. At the time of this discussion in March 2016, the family had moved many of their personal belongings out of the Pennsylvania house, driving it across the country to Washington.

Father owns his own business . . . that was started in California, but then transferred to Wyoming. However, for the last several years, the business has been headquartered and registered in the State of Washington. The family and the business receive mail in Washington, although Father had the mail forwarded to Pennsylvania when the family was here. Father has his business bank account and one personal bank account in Washington, and two other personal bank accounts in Pennsylvania. Both Mother and Father have Washington driver's licenses, though Father testified that he also has a Pennsylvania license.

Trial Court Opinion, 2/14/18, at 2-3.

Following the testimonial evidence, the trial court consulted with the Washington court. *Id.* at 1. By order dated January 16, 2018, and entered on January 17, 2018, the trial court granted Mother's preliminary objections and "transferred jurisdiction back to Washington." *Id.*

On January 22, 2018, Father filed a motion for reconsideration, which the trial court denied.[4] Father timely filed a notice of appeal on February 16, 2018. By order dated February 21, 2018, the trial court directed Father to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within 21 days, and he timely complied.[5] The trial court filed its opinion pursuant to Rule 1925(a) on March 19, 2018, wherein it incorporated its opinion dated February 14, 2018.

Father presents the following issues on appeal:

1.     Whether Pennsylvania had jurisdiction in this case after the entry of the August 30, 2017 Cumberland County Custody Order[?]

_____

[4] The trial court did not expressly grant reconsideration within 30 days of its January 17, 2018 order as required by Pa.R.A.P. 1701(b)(3)(ii). However, the court accepted Mother's response to Father's motion for reconsideration and issued an order and opinion dated February 14, 2018, denying Father's motion. Nevertheless, Father timely filed a notice of appeal from the underlying order. **See Schoff v. Richter**, 562 A.2d 912 (Pa. Super. 1989) (trial court must expressly grant reconsideration within the time allowed for filing an appeal in order to toll time for taking an appeal).

[5] Father's notice of appeal was defective because he failed to file his concise statement of errors complained of on appeal contemporaneously as required by Pa.R.A.P. 1925(a)(2)(i). **See In re K.T.E.L.,** 983 A.2d 745, 747 (Pa. Super. 2009) (holding that the failure to file a concise statement of errors complained of on appeal **with** the notice of appeal will result in a defective notice of appeal, to be disposed of on a case by case basis). However, Father timely complied with the trial court's order to file the concise statement. In addition, no party has claimed that they were prejudiced as a result of Father's procedural misstep, and we are unaware of any prejudice. Therefore, we conclude that Father's error was harmless. **Cf. J.P. v. S.P.**, 991 A.2d 904 (Pa. Super. 2010) (appellant waived all issues by failing to timely comply with the trial court's direct order to file a concise statement).

2.     Whether Mother's Preliminary Objections should have been overruled as untimely after she had agreed to the entry of a Cumberland County Custody Order over three months prior to the filing of Preliminary Objections[?]

Father's brief at 3-4.

"Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law." **R.M. v. J.S.**, 20 A.3d 496, 500 (Pa. Super. 2011). We review a court's decision to exercise or decline jurisdiction according to an abuse of discretion standard. **See M.E.V. v. R.D.V.**, 57 A.3d 126 (Pa. Super. 2012). As we have explained, "an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings." **Id.** at 129 (citation omitted).

In his first issue, Father acknowledges that, pursuant to Section 5426 of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), 23 Pa.C.S. §§ 5401-5482, the trial court "should have reviewed the pleadings [at the commencement of the custody action] to see that a child custody proceeding had been commenced by Mother in the [Washington] [c]ourt, and therefore stayed the [trial court] proceedings in order to allow the [Washington] [c]ourt filing to proceed." Father's brief at 13. The statute provides:

**§ 5426.  Simultaneous proceedings.**

**(a)** ***General rule.*** — Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth may not exercise its jurisdiction under this subchapter if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this chapter unless the proceeding has been terminated or is stayed by the court of the other state because a court of this Commonwealth is a more convenient forum under section 5427 (relating to inconvenient forum).

**(b)** ***Stay; communication with other court.*** — Except as otherwise provided in section 5424, a court of this Commonwealth, before hearing a child custody proceeding, shall examine the court documents and other information supplied by the parties pursuant to section 5429 (relating to information to be submitted to court). If the court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this chapter, the court of this Commonwealth shall stay its proceeding and communicate with the court of the other state. If the court of the state having jurisdiction substantially in accordance with this chapter does not determine that the court of this Commonwealth is a more appropriate forum, the court of this Commonwealth shall dismiss the proceeding.

. . .

23 Pa.C.S. § 5426.[6]

---

[6] Father's custody complaint, filed on the same date as his divorce action, alleged, in part, "[Mother] filed a 'Petition for Divorce (Dissolution)' in King County, Washington on June 2, 2017, docketed as Case No. 17-3-03364-6 SEA." Complaint in Custody, 6/27/17, at ¶ 11. Father also alleged that Mother has filed an "'Immediate Restraining Order (Ex Parte)" in King County, Washington on June 5, 2017, docketed under the Divorce filing." *Id.* at ¶ 12. Father then alleged that, "jurisdiction and venue are proper in the Court of Common Pleas of Cumberland County. . . ." *Id.* at ¶ 13. To the extent that Father asserts the parties supplied other information to the trial court indicating that Mother had commenced a custody action in Washington, the certified record does not include any additional information.

Although Father acknowledges that the trial court should not have exercised its jurisdiction at the time he commenced the custody action "in order to allow the [Washington] [c]ourt filing to proceed," he contends that Mother submitted to its jurisdiction by participating in the custody conciliation conference and agreeing to the August 30, 2017 custody order. Specifically, Father asserts in his first issue that Mother's consent to the August 30, 2017 custody order conferred jurisdiction on the trial court pursuant to Section 5406.[7]

We find it significant that, at the time of the custody conciliation conference, Mother acted *pro se*, and Father was aware that she had commenced the custody action in Washington on June 2, 2017. The trial court emphasized that Mother hired counsel after Father filed the petition for contempt in November 2017. Mother's counsel then filed the subject

_____

[7] Section 5406 provides:

**§ 5406. Effect of child custody determination.**

A child custody determination made by a court of this Commonwealth that had jurisdiction under this chapter binds all persons who have been served in accordance with the laws of this Commonwealth or notified in accordance with section 5408 (relating to notice to persons outside Commonwealth) or who have submitted to the jurisdiction of the court and who have been given an opportunity to be heard. As to those persons, the determination is conclusive as to all decided issues of law and fact except to the extent the determination is modified.

23 Pa.C.S. § 5406.

preliminary objections challenging the trial court's jurisdiction, "as well as claiming pendency of the prior action." Trial Court Opinion, 2/14/18, at 1.

In his second issue, assuming that Mother's consent to the custody order conferred jurisdiction on the trial court, Father asserts that the trial court abused its discretion by not dismissing Mother's preliminary objections as untimely pursuant to Pa.R.C.P. 1915.5(a), which provides:

> (a)    A party must raise any question of jurisdiction of the person or venue, and may raise any question of standing, by preliminary objection filed within twenty days of service of the pleading to which objection is made or at the time of hearing, whichever first occurs.  No other pleading shall be required, but if one is filed it shall not delay the hearing.
>
> *Note:* The court may raise at any time a question of (1) jurisdiction over the subject matter of the action or **(2) the exercise of its jurisdiction pursuant to § 5426 of the Uniform Child Custody Jurisdiction and Enforcement Act, relating to simultaneous proceedings in other courts**, § 5427, relating to inconvenient forum, and § 5428, relating to jurisdiction declined by reason of conduct. The Uniform Child Custody Jurisdiction and Enforcement Act, 23 Pa.C.S. § 5407, provides that, upon request of a party, an action in which a question of the existence or exercise of jurisdiction is raised shall be given calendar priority and handled expeditiously.

Pa.R.C.P. 1915.5(a) (emphasis added).

Father provides no statutory or case law to support his argument that Mother's consent to the August 30, 2017 custody order conferred jurisdiction on the trial court, nor are we aware of any.  He asserts that ***M.E.V.***, ***supra***, "most closely resembles the facts of the instant case. . . ."  Father's brief at 19.  In that case, this Court reversed the trial court's order that overruled the

father's preliminary objections to a custody complaint filed by the mother. The issue there was whether the trial court abused its discretion by failing to contact the New Jersey court in accordance with Section 5426(b) due to finding that the father did not commence a custody proceeding in New Jersey as contemplated by Section 5426. Specifically, the trial court found that custody proceedings in New Jersey were neither scheduled nor pending, and no initial child custody determination had been made. We reminded the trial court that the UCCJEA defines "commencement" as "[t]he filing of the first pleading in a proceeding." 23 Pa.C.S. § 5402. Because the father in that case had filed a custody pleading in New Jersey before the mother had filed a custody pleading in Pennsylvania, we held that the trial court abused its discretion under Section 5426 by exercising its jurisdiction and failing to contact the New Jersey court.

Father, however, distinguishes **M.E.V.** by baldly stating that the father in that case "did not consent to the entry of a Pennsylvania Order, as Mother did in the instant case." Father's brief at 20. We are unpersuaded. In fact, we conclude that **M.E.V.** is controlling insofar as it held, pursuant to Section 5426, "a trial court MUST not exercise jurisdiction when another state has jurisdiction[al] priority." **M.E.V.**, 57 A.3d at 129 (emphasis in original); **see also C.L. v. Z.M.F.H.**, 18 A.3d 1175, 1181-1182 (Pa. Super. 2011) (holding that, where the trial court declined jurisdiction pursuant to Section 5426, "whether or not [the] [m]other submitted to personal jurisdiction in the

Commonwealth is irrelevant, as the controlling issue in this case challenges whether subject matter jurisdiction exists in the trial court.") (citing 23 Pa.C.S. § 5421(c) ("Physical presence of or personal jurisdiction over a party or a child is not necessary or sufficient to make a child custody determination.")).

Likewise, we reject Father's assertion that the trial court erred by not dismissing Mother's preliminary objections as untimely. Father alleges in his brief that he served his custody complaint on Mother on July 20, 2017. She filed preliminary objections on November 27, 2017. Mother's preliminary objections were untimely. However, the trial court recognized, pursuant to the note to Rule 1915.5, that it may raise at any time a question of the exercise of its jurisdiction under Section 5426. Therefore, the trial court found that the timeliness of Mother's preliminary objections was irrelevant. Trial Court Opinion, 3/19/18, at 2. We agree.

Even if Mother's consent did not confer jurisdiction, Father argues that the trial court, not the Washington court, had jurisdiction "substantially in conformity with this chapter." **See** 23 Pa.C.S. § 5426(a) ("a court of this Commonwealth may not exercise its jurisdiction under this subchapter if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state **having jurisdiction substantially in conformity with this chapter**. . . .") (emphasis added). Specifically, Father asserts that the trial court had initial child custody jurisdiction at the commencement of his action pursuant to

Section 5421(a)(1).[8] Father contends the trial court had exclusive, continuing jurisdiction under Section 5422 after it entered the August 30, 2017 order either by Mother conferring jurisdiction by her consent or by the trial court having initial child custody jurisdiction.[9] As such, Father claims that the trial court abused its discretion in transferring jurisdiction to the Washington court.

---

[8] Section 5421(a)(1) provides:

**§ 5421. Initial child custody jurisdiction.**

**(a)** *General rule.* — Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:

**(1)** this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;

23 Pa.C.S. § 5421(a).

[9] Section 5422 provides, in relevant part:

**§ 5422. Exclusive, continuing jurisdiction.**

**(a)** *General rule.* — Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth which has made a child custody determination consistent with section 5421 (relating to initial child custody jurisdiction) or 5423 (relating to jurisdiction to modify determination) has exclusive, continuing jurisdiction over the determination until:

Regarding whether the trial court had initial child custody jurisdiction pursuant to Section 5421(a)(1), we observe that Section 5402 defines "home state" as "[t]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. . . . A period of temporary absence of any of the mentioned persons is part of the period." 23 Pa.C.S. § 5402.

In this case, Mother and Father testified that they lived in Washington from March 2016, until October 2016, at which time they returned to Pennsylvania. They remained in Pennsylvania until April 2017. They purchased round-trip airfare tickets to Washington, where they arrived at the end of April 2017, with the intention of returning to Pennsylvania. N.T., 1/5/18, at 31. Mother unilaterally decided to stay in Washington with the children and, on June 2, 2017, she initiated a divorce and custody action in

---

**(1)** a court of this Commonwealth determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships; or

**(2)** a court of this Commonwealth or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this Commonwealth.

23 Pa.C.S. § 5422(a).

Washington. *Id.* at 31. Mother explained, "I realized that if I did not take a step in the state where I believe we should be, where my [older] daughter is, where I have family and friends and support, that I would be in this controlling, abusive situation with my boys, and I took a step." *Id.* at 31.

The trial court concluded that Pennsylvania is not the "home state" of the children. Trial Court Opinion, 2/14/18, at 6. Rather, it concluded that Washington was the children's "home state . . . interspersed with long vacations to Pennsylvania." *Id.* at 6. The court stated that because the children "were not yet school-aged, these long vacations out-of-state were still feasible." *Id.* at n. 1. The court reasoned:

> Furthermore, the credible testimony of Mother clearly established that Washington was the Children's "home"; it is where [the children] have friends, where they have a doctor, where they attend social activities, and where they spend significant time with family. Washington was also the "home" of Father's business, including bank accounts and mail; this conclusion is clearly supported by Father's testimony that he is in the process of moving the business, including its registration, from Washington to Pennsylvania. This [c]ourt finds that Washington was the home [s]tate of the children, interspersed with long vacations to Pennsylvania. This finding is further supported by the fact that the Pennsylvania house was placed for sale for several months in 2016, and only removed due to the fact that Father determined that it was overpriced and would not sell. Clearly, the family, including Father, believed Washington State to be the family's home.

*Id.* at 6 (footnote omitted).

Significantly, Mother testified on direct examination that, since 2015, Father has had a mailbox address in Redmond Fall City, Washington, and she received mail at that address. N.T., 1/5/18, at 7-8. She testified that Father

still receives mail there. *Id.* at 8. On redirect examination, Mother testified that when they lived in Pennsylvania from October 2016 to April 2017, they continued to receive mail at that Washington address. *Id.* at 41-42. In addition, Mother testified that she maintained her Washington driver's license; her vehicle remained registered and insured in Washington; and she and the children continued to have health insurance in Washington. *Id.* at 42. Based on the totality of the record evidence, we discern no abuse of discretion by the trial court in concluding that Washington was the "home state" of the children interspersed with long but temporary absences in Pennsylvania. Therefore, we reject Father's assertion that the trial court had initial child custody jurisdiction pursuant to Section 5421(a)(1).

The trial court stated that its communication with the Washington court "revealed that a child custody action had been commenced by Mother in Washington, prior to the commencement of this Pennsylvania action by Father." Trial Court Opinion, 2/14/18, at 6. Further, because the Washington court did not decline to exercise jurisdiction, and Pennsylvania is not the home state of the children under Section 5421(a)(1), the trial court granted Mother's preliminary objections and relinquished jurisdiction to Washington. We discern no abuse of discretion or error of law pursuant to Section 5426. Accordingly, we affirm the order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>09/21/2018</u>